IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 17, 2025

**STATE OF TENNESSEE v. TAMEKA HAMILTON**

**Appeal from the Criminal Court for Washington County**
**No. 45903, 47638, 47639, 47641, 47642, 47643, 47644B      Stacy L. Street, Judge**

_____

**No. E2024-01821-CCA-R3-CD**

_____

The Defendant, Tameka Hamilton, entered guilty pleas to various offenses including reckless endangerment, evading arrest, theft, identity theft, fraudulent use of a credit card, and forgery. The trial court imposed an effective sentence of eight years and placed the Defendant in a community corrections program. The Defendant subsequently violated her probation based on failure to complete the special conditions of the drug court program. In this appeal, the Defendant contends the trial court erred in ordering her to serve the remainder of her sentence in confinement. Upon review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

William C. Donaldson, Assistant Public Defender; Melanie Sellers, District Public Defender, for the appellant, Tameka Hamilton.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; Steven R. Finney, District Attorney General; and L. Scott Shultz, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 18, 2020, in case number 45903, the Defendant entered a guilty plea to reckless endangerment and received a two-year sentence. This case was ordered to be served concurrently with case numbers 144091, 144092, 142548 and ordered to be served consecutively to any prior unexpired sentence. In count three of the same case number, the Defendant pled guilty as charged to evading arrest and received a four-year sentence to be served concurrently with count one. Counts two, four and five of the same case number

charging reckless endangerment and driving on a revoked license were dismissed. The Defendant's effective four-year sentence was to be served on supervised probation. The terms and conditions of probation were explained to and agreed upon the same day the Defendant entered her guilty plea. These terms required the Defendant to obey the law and report any arrests to her probation officer.

On October 11, 2021, the first probation violation report was filed alleging that the Defendant was arrested on September 17, 2021, for theft under $2,500, identity theft, and fraudulent use of a credit card. The report also alleged the Defendant had absconded from probation. The detail section of this report also alleged that on May 11, 2021, the Defendant committed theft under $2,500, identity theft, and fraudulent use of a credit card in Sullivan County; that on July 2, 2021, the Defendant committed the offense of fraudulent use of a credit card between $2,500 and $10,000 in Washington County; that on August 11, 2021, the Defendant committed the offense of fraudulent use of a credit card up to $1,000 and identity theft in Washington County. The report further alleged that the Defendant failed to inform her probation officer of her change of address and failed to allow her probation officer to visit her home. Specifically, the Defendant's probation officer attempted to visit her home on March 16, 2021, March 23, 2021, March 30, 2021, and July 20, 2021. The probation officer received a phone call on July 23, 2021, from a male who advised that the Defendant no longer rented from him at her reported address. The caller did not know where the Defendant moved to, and he did not have a contact number for her. The probation report noted that the Defendant had been arrested several times in September 2021 and had since been released. The Defendant had not made any attempts to report or call her probation officer. Because the Defendant's whereabouts were unknown, the report alleged she had absconded from probation. A warrant for the Defendant's arrest was issued on November 23, 2021, and the Defendant was arrested on the same day.

On June 2, 2022, the Defendant entered guilty pleas in case numbers 47638, 47639, 47641, 47642, 47643, and 47644B. In case number 47638, the Defendant entered a guilty plea to fraudulent use of a credit card under $2,500 and received a four-year sentence to be served on supervised probation. This case was ordered to be served consecutively to any unexpired sentence. The Defendant was ordered to complete recovery court after satisfying all charges pending in other counties. In case number 47639, count one charging aggravated burglary was dismissed, and in count two charging theft over $100 but less than $2,500, the Defendant pled guilty and received a four-year sentence to be served concurrently with case number 47638. In case number 47641, the Defendant entered a guilty plea to theft under $1,000 and received a probationary sentence of eleven months and twenty-nine days to be served concurrently with case number 47639. In case number 47642, the Defendant entered a guilty plea to identity theft and received a sentence of four years of community corrections to be served concurrently with case number 47641. In case

number 47643, the Defendant entered a guilty plea to identity theft and received a concurrent four-year term to be served on community corrections. In case number 47644B, the Defendant entered a guilty plea to forgery under $1,000 or less and received a two-year sentence to be served on community corrections. In count two of 47644B, the Defendant entered a guilty plea to forgery under $1,000 or less and received a two-year sentence to be served concurrently with count two. In count four of 47644B, the Defendant entered a guilty plea to forgery under $1,000 or less and received a two-year concurrent sentence to be served on community corrections.

On June 2, 2022, the trial court issued a probation order violating the Defendant's probation in case number 45903 based on the new arrests and absconding from probation. The trial court revoked the Defendant's probation and reinstated her four-year sentence to be served "to [the Alternative Community Corrections Program (ACCP)] to complete recovery court." The alternative sentencing order issued the next day provided that on June 18, 2020, the Defendant had been convicted of various thefts, evading arrest, and fraudulent use of credit cards in Washington County, for which she received an effective sentence of eight years. The court suspended imposition of the sentence and placed the Defendant in the ACCP for a term of eight years. After satisfying all charges pending in other counties, the Defendant was ordered to pay restitution, enter and complete the recovery court program, and abide by all rules, treatment recommendations, and sanctions of that program.

On July 6, 2023, the trial court issued an order transferring the Defendant's probation to be supervised by the Tennessee Department of Correction, noting that the Defendant had successfully completed and had been discharged from the ACCP. Based on this order, the Defendant's probation was set to expire on August 2, 2032. The order noted the Defendant's probationary period as ten years due to a consecutive case in Unicoi County.

On September 27, 2023, the second probation violation report was filed alleging that the Defendant (1) failed to abide by the rules and recommendations of the Recovery Court as determined by Directors Carmen Phillips and/or Rachel Rhoden and (2) engaged in threatening behavior toward other Recovery Court participants "regarding the lending of money." An arrest warrant was issued for the Defendant on the same day.

On January 19, 2024, an order revoking and reinstating and extending the Defendant's probation for eight years was entered. The order required the Defendant to comply with all previous conditions imposed, including completion of the Women's Residential Recovery Court in Nashville.

On July 24, 2024, the third violation report was filed alleging that the Defendant failed to comply with the special conditions by causing several disruptions, jeopardizing

the mental and physical safety of the community at the Women's Residential Recovery Court. The Defendant had been "unsuccessfully discharged from the program."

On November 13, 2024, the Defendant's probation violation hearing was set to be heard. At the top of the hearing, defense counsel advised the trial court that the Defendant acknowledge having violated her probation. She conceded that she did not complete the women's residential recovery court. Defense counsel advised the court that the Defendant had "something that she would like to say to the [c]ourt." After being placed under oath, the Defendant advised the court that she had "made it to Phase 5" in the recovery court program and that there were only five phases. The Defendant said she had two or three months before she would have graduated. She agreed that "something happened" but did not elaborate further. She testified that she wanted to accomplish things in her life including obtaining her GED and drug court. She was requesting the court to consider her for the drug court again, and she understood that may not be an option. If released, she planned to go into an inpatient facility for thirty days and then go out for "sober living." She stated she had maintained employment.

The Defendant had written a letter to the court, which she was permitted to read aloud. The letter noted, in relevant part, that she had failed to complete the recovery court program and that she had no "legit" reason as to why she did not complete it. She lamented that she wanted to complete something because she had never completed anything in her life. She urged the court to give her a second chance in drug court to prove to herself, her attorney, the court, and her family that she could achieve certain goals. She had been participating in the Families Free and the Criminal Addictive Thinking programs and submitted letters from those programs to the court. She apologized "wholeheartedly" for her actions prior to being in the drug court. She explained, "Since I've been incarcerated, I've learned that I can't let my anger always get the best of me."

Following the Defendant's testimony, the Defendant explicitly waived her right to a probation violation hearing and entered a guilty plea to the instant violation.

Upon being asked for the agency's recommendation by the trial court, Probation Officer Rogers stated:

> Your Honor, we've given her multiple chances at multiple programs, as many things that we can offer her.
>
> And when she said that she didn't go back to her old behaviors, I feel like that's exactly what she did when we put her in the program. That she's good at talking the talk and walking the walk, but then inside the . . . walls

of the program, then she displays other manipulative, different type of behavior that's disruptive to all the other participants.

I don't think there's anything else left for her in this state other than for her to serve her sentence, unfortunately.

Following argument by the State, the trial court engaged in the following lengthy analysis before denying the Defendant's request to be placed back in a drug treatment facility:

The Court is very aware of [the Defendant]. She has had numerous violations filed. She was a longtime participant in the First Judicial District Felony Recovery Court.

There were some sanctions that were given. There were some incarceration orders that were given while she was in the program. However, she appeared to overcome those. However . . .

[A]nd one of those included a hospitalization. One of them included being released and using cocaine or crack cocaine following a release in either Knox County or — or Davidson County.

She was let back in the program. She was doing very well. She was working. She was doing everything she's supposed to.

And then she verbally and physically threatened another member in our program to the extent that it was no longer acceptable for her to be in the outpatient program. The Court incarcerated her. The Court was going to order her to serve her sentence and was talked into by the members of the treatment team, because they did not want to give up on [the Defendant] and because she had earned that second chance, then, to recommend her for the residential facility, the women's residential facility in Nashville.

We send her there.

And then on July the 23[rd], my phone starts blowing up; email starts blowing up from the women's residential facility in Nashville saying, "We can't do anything with her. She's exhibiting that same threatening behavior," and they send her to metro Davidson County jail.

- 5 -

They have nothing to hold her.  They're demanding that we come and pick her up, which engages in a long-drawn-out conversation with Davidson County saying, "That's not the way you run a recovery court."

. . . .

[Defendant], we have done everything we can.  There is nothing else. You only want help when you are in trouble.

When you were in recovery court, you only wanted help when you would go to jail, and you'd come out and you would do so well.

But when you come out, then you want to be the queen of the cell. You want to be . . . running the cell block.  You want to be the tough person. And you put other people at risk in these programs.

And recovery court . . . will not allow you back into our recovery court and certainly not into the residential program because they feel you are a danger to them.

Now, when you're good, you're very good.  But when you're bad, you're really bad and you're dangerous. . . .

[Defendant], I'm — I'm sorry, but there is nothing left in the criminal justice system for the First Judicial District to help you.

On November 13, 2024, the trial court issued a written order revoking the Defendant's probation and ordering her to serve the remainder of the eight-year sentence in the Tennessee Department of Correction.  The Defendant filed her notice of appeal on December 12, 2024, and this case is now properly before this court for review.

## ANALYSIS

The Defendant contends the trial court erred in ordering her to serve her eight-year sentence in confinement.  In support of this issue, the Defendant does not challenge the trial court's findings of fact supporting its consequence determination requiring the Defendant to serve her original sentence in confinement.  Instead, the Defendant submits that at the time of the hearing she had goals, a job, a good attitude, a place to live, was a few months away from graduating from Recovery Drug Court and had a treatment plan in

place. In response, the State contends the trial court properly imposed the remainder of the Defendant's sentence to be served in confinement. We agree with the State.

Trial courts "possess the power, at any time within the maximum time that was directed and ordered by the court for the suspension [of the defendant's sentence], in accordance with § 40-35-311, to revoke the suspension." Tenn. Code Ann. § 40-35-310(a). Section 40-35-311 provides the procedures trial courts must follow during probation revocation proceedings.

"[A] trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release." State v. Beard, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005); see State v. Dagnan, 641 S.W.3d 751, 756 (Tenn. 2022). The statutes in effect at the time of the Defendant's revocation hearing authorize a trial court, after finding a defendant had violated probation, to impose one of the following consequences: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period by up to one year for each violation of Code section 40-35-308(c)(1); or (4) return the defendant to probation on appropriate modified conditions. Tenn. Code Ann. §§ 40-35-308, -310, -311; see Dagnan, 641 S.W.3d at 756 (citing Beard, 189 S.W.3d at 735 and n.2). If the trial court revokes a defendant's probation and suspension of sentence, then the defendant has the right to appeal. Tenn. Code Ann. § 40-35-311(e)(3); Tenn. R. App. P. 3(b).

Probation revocation involves the following two-step consideration: "[a] trial court, upon finding by a preponderance of the evidence that a defendant violated the conditions of his or her probation, must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." Dagnan, 641 S.W.3d at 753, 757 (footnote omitted). While a trial court is required to conduct a probation revocation hearing pursuant to Code section 40-35-311(b), this two-step consideration does not obligate the trial court "to hold an additional or separate hearing to determine the appropriate consequence." Id. at 757. These two steps are "two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." Id. at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." Id. at 758.

In considering the appropriate consequence to impose upon revocation, a trial court may consider, but is not limited to, the following: the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character. Id. at 759 n.5. Consideration of past criminal history is only appropriate in the second part of the two-step analysis. Id.

This court reviews a trial court's revocation of probation for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." Id. at 759. "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010). "It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." Dagnan, 641 S.W.3d at 759 (citing State v. Bise, 380 S.W.3d 682, 705-06 (Tenn. 2022)). Sufficient findings serve "'to promote meaningful appellate review and public confidence in the integrity and fairness of our judiciary.'" Id. (quoting State v. King, 432 S.W.3d 316, 322 (Tenn. 2014)). However, when a trial court fails to place its reasoning for a revocation decision on the record, "the appellate court may conduct a de novo review if the record is sufficiently developed for the court to do so, or the appellate court may remand the case to the trial court to make such findings." Id. (citing King, 432 S.W.3d at 327-28).

The record fully supports the order of the trial court requiring the Defendant to serve the remainder of her sentence in confinement. The Defendant admitted violating her probation and pleaded guilty to violating probation at her violation of probation hearing, and she does not challenge the court's finding of a violation on appeal. See Dagnan, 641 S.W.3d at 753 (holding that a trial court must "find[] by a preponderance of the evidence that the defendant violated the conditions of his or her probation"). Further, the Defendant was convicted of several offenses in June of 2020, for which she received an effective four-year sentence to be served on probation. A year and a half later, on October 11, 2021, the first probation violation report was filed based on new arrests for theft, identity theft, forgery and fraudulent use of a credit card offenses as well as absconding from probation. On June 2, 2022, the Defendant entered guilty pleas to the new offenses, consented to revocation of her four-year sentence, and the trial court reinstated and extended her sentence. She was ordered to be placed in the ACCP program which she successfully completed, and her probation was transferred to be supervised by the TDOC. Less than two months later, on September 27, 2023, the second probation violation report was filed because the Defendant engaged in threatening behavior toward other Recovery Court participants. In its oral findings, the trial court expressed concern that the Defendant verbally and physically threatened another member of the program. Nevertheless, the trial court was urged by the staff of the recovery court not to "give up" on the Defendant and once again, on January 19, 2024, revoked, reinstated, and extended the Defendant's probation for eight years.

The Defendant was given a third opportunity and placed in the Women's Residential Recovery Court in Nashville. Seven months later, on July 24, 2024, a third violation report

was filed because the Defendant caused several disruptions, jeopardizing the mental and physical safety of the community at the Women's Residential Recovery Court in Nashville. In its findings, the trial court noted that the Defendant was "dangerous" and that there were no other programs it had to offer her. Based on these findings, the Defendant was not amenable to probation, failed to obey court orders to comply with program rules to ensure effective rehabilitation, and became a significant risk of danger to the other participants in the program. Accordingly, we conclude that the trial court properly ordered the Defendant to serve the remainder of her original sentence in confinement. The Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

s/ Camille R. McMullen_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE